ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/6/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - X
JOSEFINA VALLE and WILFREDO VALLE,
individually and on behalf of all
others similarly situated,

                     Plaintiffs,

    - against -

POPULAR COMMUNITY BANK f/k/a Banco
Popular North America,

                     Defendant.
- - - - - - - - - - - - - - - - - - - - - - X

12 Civ. 9315 (LLS)

OPINION AND ORDER

    The plaintiffs, New York citizens and joint holders of a deposit account with New York-chartered Popular Community Bank ("Popular"), move to remand their putative class action complaint alleging that Popular charged excessive account overdraft fees in violation of New York law.

    Popular has removed the action from the Supreme Court of the State of New York, County of New York, Commercial Division, on the assertion that its operations in states other than New York merit the exercise of federal diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), and that federal banking laws regulating its alleged misconduct create federal question jurisdiction.

    The Court declines to exercise diversity jurisdiction under CAFA, and none of the plaintiffs' claims arise under federal law. The motion to remand is therefore granted.

1

## BACKGROUND

In their class action complaint filed in New York Supreme Court, the plaintiffs allege that the fees Popular charged its deposit account customers for overdraft protection were excessive, in violation of New York's usury laws (New York General Obligations Law § 5-501, and New York Banking Law §§ 108 and 14-a), New York General Business Law § 349, and the implied duties of good faith and fair dealing.

New York's usury laws limit the rate of interest a New York bank may charge to 16%. The plaintiffs claim that Popular's overdraft fees "are in fact interest charges for loans made by Popular to its deposit customers," Compl. ¶ 120, and occasionally impose an "effective interest rate" over 1400%, id. ¶ 71.

The plaintiffs also claim that Popular failed to disclose that a transaction would cause an account to be overdrawn, and to obtain its customers' approval before providing overdraft protection, in violation of New York General Business Law § 349 and the implied duties of good faith and fair dealing.

The plaintiffs claim to sue on behalf of a class of

> All deposit account customers of Popular on whom Popular imposed or collected one or more Overdraft Charges from November 14, 2006 to the present (the "Breach of Contract Class Period"), from November 14, 2008 to the present (the "GBL 349 Class Period"), from

July 1, 2010 to the present and/or from November 14, 2011 to the present (the "Usury Class Period").

Id. ¶ 5.

Popular's principal place of business is in New York where it serves its deposit account customers through 32 bank branches. Notice of Removal ¶ 10. It has approximately 60 branches in California, Florida, Illinois, and New Jersey. Id. Just under half (45%) of all of Popular's deposit account customers, and of those deposit account customers who incurred an overdraft fee in 2012, had New York addresses. Id. ¶ 11.

Because its deposits are insured by the Federal Deposit Insurance Corporation, Popular is subject to section 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA"), 12 U.S.C. § 1831d, which limits the interest rate a state-chartered, federally-insured bank may charge. Popular is also subject to the Board of Governors of the Federal Reserve System's Regulation E, 12 C.F.R. § 205.

### 1.
### Diversity Jurisdiction Under CAFA

CAFA "confers original federal jurisdiction over any class action with minimal diversity (e.g., where at least one plaintiff and one defendant are citizens of different states) and an aggregate amount in controversy of at least $5 million (exclusive of interest and costs)." Estate of Pew v. Cardarelli, 527 F.3d 25, 30 (2d Cir. 2008).

It is undisputed that the amount in controversy exceeds $5 million. Because Popular is a New York citizen, and has deposit account customers in California, Florida, Illinois, and New Jersey, the Court has diversity jurisdiction.

The plaintiffs ask the Court to decline to exercise such jurisdiction under a discretionary exception in CAFA, 28 U.S.C. § 1332(d)(3). As explained in Smith v. Manhattan Club Timeshare Ass'n, Inc., 12 Civ. 6363 (PKC), 2013 WL 1955882, at *2 (S.D.N.Y. May 10, 2013):

> Under the "discretionary exception," a district court "may, in the interests of justice and looking at the totality of the circumstances," decline to exercise jurisdiction over a class action in which greater than one-third but less than two-thirds of the putative class members, and the primary defendants, are citizens of the state in which the action was originally filed, based upon consideration of the enumerated factors.

As relevant here, those "enumerated factors" include:

- (A) whether the claims asserted involve matters of national or interstate interest;

- (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

- (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

- (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the

>       other members of the proposed class is dispersed
>       among a substantial number of States;

28 U.S.C. § 1332d(3).

Because the plaintiffs plead only claims under New York law against a New York bank with a large percentage (roughly 45%) of New York customers, the court declines to exercise jurisdiction under the discretionary exception.

Retaining jurisdiction over this action would impair "the ability of state courts to decide cases of chiefly local import or cases that concern traditional state regulation of the state's corporate creatures." Estate of Pew, 527 F.3d at 26.

## 2.
## Federal Question Jurisdiction

### A. Complete Preemption

Popular argues that the plaintiffs' New York usury claim "is actually a claim 'arising under' federal law," Def.'s Opp. at 15, because Section 521 of DIDA, 12 U.S.C. § 1831d, completely preempts it. On the contrary, DIDA itself states that the federal rate only applies when it exceeds the state-law rate. When, as here, state law provides the higher rate, the lending bank is permitted to charge it, and the borrower is permitted to sue for usury under state law.

Under DIDA, 12 U.S.C. § 1831d(a), a state-chartered, federally-insured bank may charge interest at the greater of:

5

(a) "not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank" is located (the "DIDA rate" or "federal rate"), or

(b) the "rate allowed by the laws of the State, territory, or district where the bank is located" (the "state rate" or "New York rate").

At present, the New York rate of 16% exceeds the DIDA rate, and Popular makes no claim that the opposite was true at any time relevant to this litigation.

DIDA's operation is explained in Thomas v. U.S. Bank Nat'l Assn. ND, 575 F.3d 794, 798-99 (8th Cir. 2009) (brackets and emphases in original), cert. denied, 130 S. Ct. 3504:

> The plain language of the statute clearly indicates the interest rate allowed by federal law only comes into play "if the applicable rate prescribed in this subsection exceeds the rate such State bank or insured branch of a foreign bank would be permitted to charge in the absence of this subsection." Id. (emphasis added). In other words, when the interest rate allowed by state law exceeds the interest rate set forth in DIDA, the federal statute does not apply.
>
> . . .
>
> If the rate prescribed in subsection (a) of this section exceeds the rate such State bank or such insured branch of a foreign bank would be permitted to charge in the absence of this section, and such State fixed rate is thereby preempted by the rate described in subsection (a) of this section,

> the taking, receiving, reserving, or charging a greater rate of interest than is allowed by subsection (a) of this section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of the interest paid from such State bank or such insured branch of a foreign bank taking, receiving, reserving, or charging such interest.

12 U.S.C. § 1831d(b).

This remedy provision, as does the substantive provision, clearly indicates the limited nature of the federal statute's preemption of state law, by stating the federal remedy only applies "[i]f the rate prescribed in subsection (a) of this section exceeds the rate such State bank or such insured branch of a foreign bank would be permitted to charge in the absence of this section." Id. The limited scope of preemption is emphasized by the subsection's phrase stating "and such State fixed rate is thereby preempted by the rate described in subsection (a) of this section" which follows the conditional circumstances under which the statute applies, i.e., if the federal rate exceeds the rate allowed by state law.

Thus, because the New York rate of 16% exceeds the DIDA rate, DIDA disclaims any preemptive effect, and the cause of action is not "federal" in more than a procedural (or epithetical) sense: the outcome of following a federal statute is that the case is governed by state law. See King v. Marriott Int'l Inc., 337 F.3d 421, 425 (4th Cir. 2003) ("Where no

7

discernable federal cause of action exists on a plaintiff's claim, there is no complete preemption, for in such cases there is no federal cause of action that Congress intended to be the exclusive remedy for the alleged wrong.").

Thus, the usury claimed is a violation of state, not federal law, and removal is not available under 28 U.S.C. § 1331 as based on a federal law.

### B. Disputed and Substantial Federal Issues

Popular argues that the claims concerning its failure to notify and obtain consent from its customers before providing overdraft protection "are simply allegations that" it "violated federal Regulation E," Def.'s Opp. at 22, and therefore arise under federal law under Broder v. Cablevision Sys. Corp., 418 F.3d 187 (2d Cir. 2005).

Broder provides that state-law claims arise under federal law if they "'necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" Id. at 194, quoting Grable & Sons Metal Prods., Inc., v. Darue Eng'g & Mfg., 545 U.S. 308, 314, 125 S. Ct. 2363, 2367 (2005).

Although the complaint recites that Popular's misconduct violated Regulation E, it seeks relief only for violations of New York law.  The plaintiffs do not allege that a court must

8

determine that Popular violated Regulation E in order for them to prevail on their state-law claims. Regulation E is not mentioned in the removal petition, much less asserted as a ground of federal jurisdiction. Thus, this case does not fall within the holding in <u>Broder</u>, where the plaintiff sought a declaratory judgment that the defendant violated federal law, alleged that the defendant breached federal law provisions incorporated by reference into a contract, and claimed that the defendant violated New York General Business Law § 349 by violating federal law. <u>Broder</u>, 418 F.3d at 194-195.

Because proof of a violation of Regulation E is not "an essential element" of any asserted claim, <u>Grable</u>, 545 U.S. at 315, 125 S. Ct. at 2368, the complaint does not necessarily raise a federal issue, and there is no federal question jurisdiction.

## CONCLUSION

The plaintiffs' motion (Dkt. No. 10) is therefore granted. The clerk is directed to enter judgment accordingly.

Dated: New York, New York
       August 6, 2013

*[signature: Louis L. Stanton]*
LOUIS L. STANTON
U.S.D.J.

9